## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
## MADISON DIVISION

| | |
|---|---|
| Virginia Prust, Individually and as Special Administrator for the Estate of Valmore Prust, Deceased, | Case No. 14-cv-143 |
| Plaintiff, | |
| v. | |
| Weyerhaeuser Company, *a corporation;* 3M Company, *a corporation*; Donaldson Company, Inc., *a corporation*; Metropolitan Life Insurance Company*, a corporation*; Owens-Illinois, Inc., *a corporation*; Unknown Insurers of Owens-Illinois, Inc., *a corporation;* Unknown Insurers of Roddis Plywood Corporation, *a corporation;* Unknown Insurers of Weyerhaeuser Company, *a corporation;* | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Now comes the plaintiff, Virginia Prust, by and through her attorneys, Cascino Vaughan Law Offices, Ltd., and complains against the above defendants as follows:

## JURISDICTION AND PARTIES

1.      Plaintiff Virginia Prust is the widow of decedent Valmore Prust and is an adult citizen and resident of Marshfield, Wisconsin.

2.      Decedent Valmore Prust died in the state of Wisconsin on May 17, 2013. Prior to his death, decedent was an adult citizen and resident of Marshfield, Wisconsin.

3.      Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the

Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos fireproofing products were manufactured and asbestos containing products were used in manufacturing production.   Weyerhaeuser is legally responsible for the conduct of Roddis Plywood Corporation, the former owner and operator of the Marshfield plant.

4.      Defendant 3M Company ("3M") designed, manufactured, and sold masks for personal breathing protection in occupational settings, including without limitation the 3M 8710.

5.      Defendant Donaldson Company, Inc. ("Donaldson") is responsible for the conduct of Carter Day. Carter Day designed, manufactured, and sold dust control devices, including without limitation baghouse dust collectors.

6.      Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry.

7.      Defendant Owens-Illinois, Inc. ("O-I") designed and sold licenses for a patent to manufacture of fire doors incorporating asbestos-containing cores.   O-I also manufactured, sold, and designed asbestos products, including without limitation fire doors and fire door cores.   O-I was the owner of the tradename "Kaylo" which was used in selling the doors, cores, and patent licenses.

8.      Unknown Insurers of Owens-Illinois, Inc. are named pursuant to Wis.Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

9.      Unknown Insurers of Roddis Plywood Corporation are named pursuant to Wis.Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

10.     Unknown Insurers of Weyerhaeuser Company are named pursuant to Wis.Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

11.     Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United

States Code, §1332.

12.    The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

13.    Venue is proper pursuant to Title 28, United States Code, §1391.


## GENERAL ALLEGATIONS

14.    The operations at the Marshfield plant involve cutting, sawing, and trimming of asbestos containing fire doors and cleanup, and disposal of the waste and scrap from such doors. At certain times the mixing of asbestos fibers to make the cores for the fire doors was a part of the manufacturing process.

15.    Decedent inhaled airborne asbestos fibers released during operations at the Marshfield plant as a result of the following:

    a.    His employment at the Marshfield plant beginning in 1958;

    b.    asbestos fibers contaminating the home, auto, lunchroom, and other locations where non-work related activities were performed;

    c.    asbestos fibers released from the Marshfield plant operations which contaminated the surrounding community; and

    d.    transport of asbestos fibers from the Marshfield plant to other locations.

16.    During the period of his exposures, decedent did not understand or appreciate the dangerous nature of asbestos and of the nature of the risks of asbestos.

17.    As a direct and proximate result of the conduct of defendants, decedent suffered from asbestos related diseases, including without limitation lung cancer diagnosed on or about January 7, 2010, and non-malignant asbestos conditions including without limitation asbestosis.

18.   When decedent was diagnosed with lung cancer, his wife, plaintiff Virginia Prust, and his daughter Lori Adler were present. They asked the diagnosing physician whether decedent's cancer was caused by asbestos, and the diagnosing physician told them that it was not.

19.   Plaintiff first possessed medical evidence of a probable link between the defendants' conduct and her decedent's cancer when Dr. Henry Anderson provided a report to plaintiff's attorneys on October 23, 2013.

20.   The asbestos disease process and injury began before April, 1994.

21.   All exposures to asbestos that decedent received contributed to and caused the decedent's asbestos related conditions.

22.   As a result of the asbestos related diseases, decedent died on August 18, 2013.

23.   Decedent suffered great pain, physical impairment, and great mental pain and anguish. He is liable for large sums of money for medical and hospital care, and suffered losses to his personal property and possessions. Further, as a result of decedent's death, funeral, cemetery, and related expenses and costs have been incurred.

24.   At all times, plaintiff Virginia Prust was the wife of decedent and was cohabitating with him and was enjoying his services, companionship, society and relationship.

25.   As a result of decedent's disease and his resulting death, his next of kin have suffered and will suffer in the future pecuniary losses and have suffered and will suffer in the future a loss of society and companionship with decedent.

26.   As a direct and proximate result of the one or more of the wrongful acts or omissions of the defendants, plaintiff

        a.    has been deprived of decedent's services, companionship, society, and relationship from the time of his injury;

    b.      has been hindered and prevented from transacting and attending to her usual business and personal affairs.

27.    Plaintiff brings this claim as a wrongful death action pursuant to Wis. Stat. § 895.04 and as a survival action pursuant to Wisconsin law.

## COUNT I - PRODUCT LIABILITY - NEGLIGENCE

28.    Plaintiff brings this claim for negligence and restates and re-alleges the allegations in paragraphs 1 - 27 above.

29.    The term "Kaylo fire doors" is used to collectively used to refer to both O-I patented doors and cores sold by O-I.

30.    Plaintiff brings this claim against O-I and unknown insurers of O-I for

    a.      designing fire doors and selling a license to manufacture such doors to Weyerhaeuser and;

    b.      manufacturing and selling fire door cores to Weyerhaeuser.

31.    Pursuant to a written agreement, O-I was paid a royalty for each door produced pursuant to the patented process.

32.    It was reasonably foreseeable to O-I that the decedent and other workers working in or in proximity to Kaylo door production operations at Weyerhaeuser would inhale asbestos fibers released from the Kaylo doors during the production operations.

33.    Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes serious and fatal disease.

34.    Decedent did not know that asbestos products were dangerous or harmful at the time of his exposures.

35.    Defendants had a duty to exercise reasonable care for the safety of decedent and others who

worked with or were exposed to the defendants' asbestos products.

36. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a.     Failed to adequately warn plaintiff or others of the health hazards of asbestos associated with Kaylo doors;

    b.     Failed to investigate or test for the health effects of asbestos in Kaylo doors;

    c.     Failed to instruct decedent, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

    d.     Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their production when substitute materials were available.

37. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff and decedent were injured as described above.


## COUNT II – PRODUCT LIABILITY (UNREASONABLY DANGEROUS PRODUCT)

38. Plaintiff brings this claim for strict product liability and restates and re-alleges the allegations in paragraphs 1 – 37 above.

39. This claim is asserted against O-I.

40. Defendant was in the business of selling Kaylo fire doors (including patent rights, doors, and cores) and other asbestos containing products.

41. Pursuant to a written agreement, O-I sold the patented process right for each Kaylo door produced by Weyerhaeuser and collected a royalty payment.

42. The Kaylo patent process was sold with the expectation by O-I that the process would be without substantial change and the production of doors pursuant to the process would release asbestos fibers in the air.

43.    Decedent was exposed to asbestos fibers released during the production of the Kaylo doors pursuant to the patented process.

44.    Defendants' patented process was defective and unreasonably dangerous in one or more of the following ways:

    a.    Failed to adequately warn decedent or others of the health hazards of asbestos released during production of Kaylo doors;

    b.    Failed to investigate or test for the health effects of asbestos released during production of Kaylo doors;

    c.    Failed to instruct decedent, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

    d.    Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their production when substitute materials were available.

45.    As a direct and proximate result of the acts and omissions of the defendants above, the decedent and plaintiff were injured as described above.

## COUNT III – NEGLIGENT NUISANCE

46.    Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser for negligent public and private nuisance.

47.    Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of decedent's exposures.

48.    Weyerhaeuser, during operations to manufacture fire doors at the Marshfield plant beginning in the 1950s, caused asbestos fibers to be released and contaminate the air in various settings in which no work related activities were being conducted or the decedent was not engaged in work related activities, including without limitation:

    a.  the community surrounding the plant;

    b.  homes and vehicles;

    c.  landfills; and

    d.  activities on the premises which were not work related.

49.    The operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be transported to areas more distant through various means, including without limitation:

    a.  worker clothing, personal effects, hair, and skin which had become contaminated by asbestos fibers at the plant; and

    b.  collecting, removing, hauling, and dumping asbestos waste materials.

50.    The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by decedent Valmore Prust.

51.    Plaintiff and others inhaled asbestos fibers from the contaminated air and property.

52.    The contamination by the asbestos fibers is an unreasonable interference with a right common to the general public to clean air.

53.    The contamination by the asbestos fibers is an unreasonable interference with decedent's private rights, including the right to use and enjoy private property.

54.    The unreasonable interference with the decedent's private rights and property and the public's right to clean air is unrelated to any employment relationship or duties with defendant.

55.    Weyerhaeuser Company had a duty to exercise reasonable care for the safety of decedent and the public from asbestos fibers released during Weyerhaeuser's operations of the Marshfield plant or transported to other locations as a result of plant operations.

56.     Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

57.     Decedent did not know that asbestos or asbestos products were so dangerous or harmful at the time of his exposures.

58.     Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known that Weyerhaeuser's Marshfield plant operations released asbestos into the community or resulted in transport of asbestos fibers to other locations as a result of plant operations.

59.     Weyerhaeuser permitted the Marshfield plant operations to continue without abating the release into the community and transport to other locations of asbestos fibers.

60.     Weyerhaeuser breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a.   Failed to adequately warn decedent or others of the health hazards of asbestos;

    b.   Failed to adequately investigate health effects of asbestos;

    c.   Failed to adequately test for air levels of asbestos;

    d.   Failed to adequately instruct decedent or others in the use of precautionary measures relating to airborne asbestos fibers;

    e.   Used defectively designed asbestos-containing products when substitutes were available;

    f.   Failed to use proper engineering techniques or methods, or used unsafe techniques or methods, in collecting, removing, hauling, and dumping of asbestos-containing materials.

    g.   Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.

    h.   Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971.

i.   Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; And Wis. Adm. Code Ind 12.20;

j.   Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists; and

k.   Failed to take corrective action after being put on notice of the above negligent acts.

61.   The asbestos fibers caused special injury of asbestos related disease to decedent Valmore Prust.

62.   The contamination by asbestos fibers from the Marshfield plant operations:

a.   Adversely affected the health interests of the community at large;

b.   Interfered with the public health and safety;

c.   Interfered with the right of plaintiffs to enjoyment and use of their property.

63.   As a direct and proximate result of the nuisance, the decedent and plaintiff were injured as described above.


## COUNT IV – INTENTIONAL NUISANCE

64.   Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser for intentional public and private nuisance.

65.   Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of decedent's exposures.

66.   The operations of Weyerhaeuser's Marshfield plant caused release and emission of dangerous asbestos fibers which contaminated the air in the surrounding community where decedent lived.

67.   The operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be

transported to areas more distant through various means, including without limitation

    a.   contaminated worker clothing and personal effects; and

    b.   collecting, removing, hauling, and dumping asbestos waste materials.

68.    The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by decedent Valmore Prust.

69.    The contamination by the asbestos fibers is an unreasonable interference with a right common to the general public to clean air.

70.    The contamination by the asbestos fibers is an unreasonable interference with decedent's right to use and enjoyment of private property.

71.    Decedent and others inhaled asbestos fibers from the contaminated air and property.

72.    The unreasonable interference with the public right to clean air and the private property rights is unrelated to any employment relationship or duties with defendant.

73.    Weyerhaeuser had knowledge of the dangers of asbestos fibers to cause serious diseases and death.

74.    Weyerhaeuser created conditions and activities that released asbestos fibers into the community as a result of Weyerhaeuser's operations of the Marshfield plant and transport of asbestos fibers to other locations as a result of plant operations.

75.    Weyerhaeuser knew that asbestos fibers were being released into the community and transported to other locations as a result of plant operations.

76.    Weyerhaeuser knowingly, intentionally, and recklessly permitted the Marshfield plant operations to continue without abating the release into the community and transport to other locations of asbestos fibers.

77.     Decedent suffered the special injury of asbestos related disease.

78.     The contamination by asbestos fibers from the Marshfield plant operations:

      d.     Adversely affected the health interests of the community at large;

      e.     Interfered with the public health and safety;

      f.     Interfered with the right of decedent to enjoyment and use of his property.

79.     The conduct of Weyerhaeuser created an intentional nuisance for whichWeyerhaeuser is liable to plaintiff for the injuries as described above.

## COUNT V – PRODUCTS LIABILITY – STRICT LIABILITY

80.     Plaintiff brings this claim for strict liability against defendant Donaldson.

81.     Plaintiff restates and re-alleges the allegations set forth in lines 1-79 above.

82.     Defendant was at all relevant times in the business of selling dust control devices.

83.     Defendant placed its dust control devices into the stream of commerce with the expectation that they would reach decedent and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendant.

84.     Defendant designed, manufactured, and/or sold dust control devices that malfunctioned or otherwise failed to adequately control dust, exposing decedent to asbestos dust at the Marshfield plant and in the surrounding environment.

85.     Defendant's dust control devices were defective and unreasonably dangerous at the time they left the possession or control of defendant in one or more of the following ways:

      a.     Failed to adequately warn decedent or others of the health hazards of asbestos which existed during operation of the dust control devices;

      b.     Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

      c.      Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

      d.      Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers;

86.    As a direct and proximate result of the acts and omissions of the defendant above, decedent and plaintiff were injured as described above.

## COUNT VI – PRODUCTS LIABILITY – NEGLIGENCE

87.    Plaintiff brings this cause of action for negligence against defendant Donaldson.

88.    Plaintiff re-states and re-alleges the allegations set forth in lines 1-86 above.

89.    It was reasonably foreseeable that defendant's dust control devices would be used to control asbestos-containing dust.

90.    Defendant knew the dust control devices were being used for control of emissions during removal and disposal of asbestos containing materials.

91.    Defendant represented or held out the dust control devices to be effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

92.    The dust control devices did not properly control the release of asbestos fibers during the removal and disposal of asbestos containing material at the Marshfield facility.

93.    Defendant had a duty to exercise reasonable care for the safety of decedent and others when defendant's dust control devices were used to protect against emissions during removal disposal of asbestos containing waste materials.

94.    Defendant knew or in the exercise of ordinary or reasonable care ought to have known

asbestos causes disease and/or death and that the dust control devices were not effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

95.    Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

      a.    Failed to adequately warn decedent or others of the health hazards of asbestos which existed during operation of the dust control devices;

      b.    Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

      c.    Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

      d.    Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers.

96.    As a direct and proximate result of the acts and omissions of the defendant above, decedent and plaintiff were injured as described above.


## COUNT VII – PRODUCTS LIABILITY – STRICT LIABILITY

97.    Plaintiff brings this claim for strict liability against defendant 3M.

98.    Plaintiff re-states and re-alleges the allegations set forth in lines 1-96 above.

99.    Defendant was at all relevant times in the business of selling personal protective equipment, including without limitation masks.

100.    Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

101.    Defendant placed its masks into the stream of commerce with the expectation that they would reach decedent and other users and consumers without substantial change in the

condition they were in when they left the possession or control of defendants.

102.    Defendant's masks reached decedent without substantial or unforeseeable change in the

        condition in which it was sold.

103.    Decedent used defendant's masks in the condition in which they left the possession or

        control of such defendants.

104.    Defendant's masks was defective and unreasonably dangerous at the time it left the

        possession or control of defendants in one or more of the following ways:

        a.      Failed to adequately warn decedent or others of the health hazards of asbestos
                which existed when wearing defendant's masks;

        b.      Failed to investigate or test for the effectiveness of the masks in preventing the
                inhalation of asbestos fibers;

        c.      Failed to instruct decedent, his employers, or others about the inadequacies of using
                the masks as precautionary measures against airborne asbestos fibers;

        d.      Defectively designed such that the masks did not adequately protect against or
                prevent exposure to asbestos fibers;

        a.      Failed to specify or instruct in the proper use of the masks.

105.    As a direct and proximate result of the acts and omissions of the defendants above,

        decedent and plaintiff were injured as described above.


## COUNT VIII – PRODUCTS LIABILITY – NEGLIGENCE

105.    Plaintiff brings this claim for negligence against defendant 3M.

106.    Plaintiff re-states and re-alleges the allegations set forth in lines 1-105 above.

107.    It was reasonably foreseeable that defendant's personal protective masks would be used to

        prevent exposure to asbestos.

108.    Defendants knew and expected the masks would be used to protect against the inhalation of

        asbestos fibers.

109.   Defendants represented or held out the masks to be adequate in the protection against inhalation of asbestos fibers during the type of operations at the Marshfield plant.

110.   The masks did not properly protect against inhalation of asbestos fibers from the operations at the Marshfield facility.

111.   Defendant had a duty to exercise reasonable care for the safety of decedent and others who used defendants' personal protective equipment to protect against exposure to asbestos fibers.

112.   Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

113.   Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a.   Failed to adequately warn decedent or others of the health hazards of asbestos which existed when wearing defendant's masks;

   b.   Failed to investigate or test for the effectiveness of the masks preventing the inhalation of asbestos fibers;

   c.   Failed to instruct decedent, his employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

   d.   Defectively designed its personal protective equipment such that it did not adequately protect against or prevent exposure to asbestos fibers;

   a.   Failed to specify or instruct in the proper use of the masks.

114.   As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.


## COUNT IX – CIVIL CONSPIRACY


115.   Plaintiff brings this cause of action for civil conspiracy against defendant Metropolitan

Life Insurance Company.

116.   Plaintiff restates and re-alleges the allegations set forth in lines 1 – 114 above.

117.   Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully

combined, agreed, and conspired with each other for the purpose of accomplishing one or

more of the following unlawful purposes:

   a.   Suppressing information about the health hazards of asbestos, including medical
        and scientific data, from those persons who would be exposed to the asbestos from
        the products made and sold by the conspirators,

   b.   Affirmatively asserting, in a manner not warranted by the information possessed by
        the conspirators, claims that the conspirators knew were false, namely, that it was
        safe to work with and in close proximity to asbestos.

118.   One or more of the conspirators, including Metropolitan Life, performed the following

tortious acts in furtherance of the conspiracy:

   a.   Failed to warn about health hazards of asbestos; failed to investigate health hazards
        of asbestos;

   b.   interfered with scientific and medical studies about the health hazards of asbestos;
        or

   c.   failed to instruct about precautionary measures required for protection.

119.   As a direct and proximate result of the acts of the conspiracy described above, decedent

and plaintiff were injured as described above.


## COUNT X – WRONGFUL DEATH

120.   Plaintiff brings this count individually and on behalf of decedent's next of kin for wrongful

death against all defendants and incorporates by reference all allegations 1 - 119 above.

121.   Defendants' actions, jointly and severally, as described in the preceding paragraphs,

caused the wrongful death of decedent and loss of society and companionship, funeral,

medical and other expenses, pecuniary damages and other damages have been suffered by plaintiff and decedent's next of kin.

## COUNT XI – PUNITIVE DAMAGES

122.   Defendants acted maliciously, with intentional disregard for the rights of decedent and plaintiff for which plaintiff is entitled to recover punitive damages.

## COUNT XII - DECLORATORY JUDGMENT – UNCONSTITUTIONAL

123.   In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

124.   In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

125.   Plaintiff seeks a declaration that retroactive application of 2005 Act 155 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

   a.   Judgment against defendants, jointly and severally, for compensatory and general damages.

   b.   Punitive damages in an amount to be determined against each defendant.

   c.   A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to this case.

   d.   Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by a jury.

Dated: May 14, 2014

/s/ Robert G. McCoy                  

Michael P. Cascino
Robert G. McCoy
Attorney for plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: mcascino@cvlo.com
Email3: bmccoy@cvlo.com